Robert H. Stempler (#160299)
Consumer Law Office of Robert Stempler, APC
8200 Wilshire Blvd, Ste 200
Beverly Hills, CA 90211-2331
Telephone: (323) 486-0102
SoCalConsumerLawyer@gmail.com

Phillip A. Bock (pro hac vice to be applied for)
Tod A. Lewis (pro hac vice to be applied for)
David M. Oppenheim (pro hac vice to be applied for)
Mara A. Baltabols (pro hac vice to be applied for)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
tod@classlawyers.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TERRY FABRICANT**, a California resident, individually and as the representative of a class of similarly-situated persons,<br><br>**Plaintiff,**<br><br>v.<br><br>**BBMC MORTGAGE, LLC** and **PLATEAU DATA SERVICES, LLC dba RATEMARKETPLACE**,<br><br>**Defendants.** | **No.**   8:19-cv-00240<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**INTRODUCTION**

1  Plaintiff, Terry Fabricant ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2  The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3  The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed telemarketing calls to cellular telephones without the "prior express written consent" of the called party.

4  Defendants Plateau Data Services, LLC d/b/a RateMarketplace ("RateMarketplace") and BBMC Mortgage, LLC ("BBMC") (collectively, "Defendants") made at least one automated telemarketing call to Plaintiff using equipment prohibited by the TCPA, even though they did not have his prior express written consent to do so.

5  Plaintiff did not give prior express written consent to receive an autodialed phone call on his cellular phone from either of the Defendants.

6  This case challenges Defendants' practice of initiating autodialed telemarketing calls to cellular telephones without the prior express written consent of the called party as required by the TCPA. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

7  Plaintiff seeks class-wide relief against Defendants for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best

1    means of obtaining redress for Defendants' illegal telemarketing and is consistent

2    both with the private right of action afforded by the TCPA and the fairness and

3    efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

4         8    Defendants' practice caused actual harm to Plaintiff and the other

5    members of the Class in several ways, including temporarily using their cellular

6    phones and tying up their lines, invading their privacy, causing wear and tear on

7    their cellular phones, consuming battery life, and causing some of them to be

8    charged for calls they did not want to receive. Moreover, these calls injured

9    Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a

10   nuisance, and disturbed their solitude.

11                                    **PARTIES**

12        9    Plaintiff, Terry "Luke" Fabricant, is an individual and a citizen of

13   California, residing in Los Angeles, California.

14        10   Defendant BBMC Mortgage, LLC is a Delaware limited liability

15   company headquartered at 100 West 22nd Street, Lombard, Illinois 60148, and

16   with offices in California, including a location within this federal district at 15300

17   Barranca Parkway, Suite 200, Irvine, CA.

18        11   Defendant Plateau Data Services, LLC is a Delaware limited liability

19   company. Plateau Data Services, LLC is headquartered at 1875 South Grant Street,

20   #950, San Mateo, California 94402, and uses the trade names "RateMarketplace"

21   and "RateMarketplace.com."

**JURISDICTION AND VENUE**

12     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

13     Personal jurisdiction exists in California because Plaintiff resides in California, a substantial portion of conduct took place in California, and each of the Defendants has transacted business and made or performed contracts substantially connected with the State.

14     Venue is proper in the Central District of California because BBMC resides in this District, all Defendants are residents of the State for venue purposes, Defendants have sufficient contacts with this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

**BACKGROUND AND ENFORCEMENT OF THE TCPA**

15     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16     When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by

1    the proliferation of new and more powerful autodialing technology. *Id.*, 18 FCC

2    Rcd. 14014, ¶¶ 2, 8 (2003)

3        17    The problems Congress identified when it enacted the TCPA have

4    only grown worse in recent years. The FCC has emphasized that action must be

5    taken to "stop the scourge of illegal robocalls" because "U.S. consumers received

6    approximately    2.4    billion    robocalls    per    month    in    2016." *See*

7    https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-

8    spoofing.

9        **THE TCPA PROHIBITS AUTOMATED TELEMARKETING CALLS**

10       18    The TCPA requires prior express written consent for all autodialed

11   telemarketing calls to cellular telephone numbers. *In re Rules and Regulations*

12   *Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. §

13   64.1200(f)(1), (12).

14       19    "The term prior express written consent means an agreement, in

15   writing, bearing the signature of the person called that clearly authorizes the seller

16   to deliver or cause to be delivered to the person called advertisements or

17   telemarketing messages using an automatic telephone dialing system or an

18   artificial or prerecorded voice, and the telephone number to which the signatory

19   authorizes such advertisements or telemarketing messages to be delivered." 47

20   C.F.R. § 64.1200(f)(8).

21

20    "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i)(A).

21    According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

22    Pursuant to its authority to make rules and regulations to implement the TCPA, 47 U.S.C. § 227(b)(2), the FCC has ruled in a 1995 Memorandum Opinion and Order that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules & Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23    On May 9, 2013, the FCC released a Declaratory Ruling confirming that a person or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of

… section 227(b) … that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("*DISH Network*").

24    A "seller" may be liable for telemarketing activities that it outsources, even if it does not physically place the calls:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*DISH Network*, 28 FCC Rcd at 6588, ¶ 37.

25    Finally, the FCC has stated that called parties may obtain "evidence of these kinds of relationships ... through discovery, if they are not independently privy to such information." *Id.* at 6592-93, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*

26    Under principles of agency and apparent authority, BBMC is vicariously liable for the autodialed telemarketing calls RateMarketplace placed to the cellular phones of Plaintiff and the Class advertising a loan with BBMC.

27    BBMC ratified and accepted the benefits of RateMarkplace's autodialed telemarketing calls and it appeared to Plaintiff and the Class that RateMarketplace acted with BBMC's authority when placing the robocalls. *See* https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts ("Robocalls are calls made with an autodialer or that contain a message with a prerecorded or artificial voice.")

## FACTS

28    Advertising to cellular phones uses the called party's equipment.

29    RateMarketplace transmitted autodialed calls to cellular phones—those of Plaintiff and the other members of the putative Class—to promote BBMC's products and services without the called parties' prior express written consent.

**A.    Relationship between RateMarketplace and BBMC.**

30    RateMarketplace offers mortgage rate comparison tools to consumers.

31    RateMarketplace contracts with various mortgage lenders, including BBMC, to generate business and connect consumers to lenders.

32    RateMarketplace acts as an intermediary between mortgage companies, such as BBMC, to solicit business.

33 RateMarketplace solicits business through robocalls to cellular phones.

34 Once RateMarketplace connects with a consumer through a robocall, RateMarketplace transfers or refers the call to a mortgage lender, such as BBMC.

35 RateMarketplace programs its autodialer to transfer a connected call directly to BBMC.

**B.    RateMarketplace called cellular phones on behalf of BBMC using an autodialer.**

36 RateMarketplace called Plaintiff's cellular phone using an autodialer to advertise BBMC's mortgage refinance rates and loan options and did so on BBMC's behalf.

37 On November 1, 2018 at 9:19 a.m. PST, Plaintiff received an unsolicited call on his cellular phone.

38 The call began with a distinctive click and then a pause after Plaintiff answered. Plaintiff picked up the phone, heard a "click" and then said, "Hello?" several times without answer before a live person came on the line. This click-and-pause is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018) (in 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone

1    numbers in a manner that predicts the time when a consumer will answer the phone

2    and the telemarketer will be available to take the call.") (citing and quoting 2003

3    Order, 18 FCC Rcd. 14022, at n. 31).

4         39    According to BBMC, that call came from RateMarketplace.

5         40    The person said she was calling Plaintiff about a mortgage on a

6    property in Oakland, California, and wanted to talk to him about a refinance. The

7    woman didn't identify herself. Plaintiff said he "didn't want to talk to strangers."

8    The woman placed Plaintiff on hold. He hung up.

9         41    A minute or two later, on November 1, 2018, at 9:22 a.m., Plaintiff

10   received another phone call. This time, a man identifying himself as "Jacob

11   Torres" was on the line. Mr. Torres stated that he was with "BBMC Mortgage" and

12   calling Plaintiff to discuss a refinance. Plaintiff told Mr. Torres that he was too

13   busy to talk by phone, and gave him his e-mail address.

14        42    Minutes later, on November 1, 2018 at 9:26 a.m., Plaintiff received

15   the following e-mail from j.torres@mybbmc.com:

16        Luke,

17        This is Jacob Torres with BBMC Mortgage. You can call me back
          directly at 760-546-7034. Call me as soon as you are ready and I can
18        answer your questions and get you a rate and payment quote for your
          refinance. Here are a few links to our 3rd party reviews.
19
     *See* Exhibit A (e-mail chain).
20

21

10

43     Plaintiff responded by asking how Mr. Torres had gotten Plaintiff's telephone number: "May I know, please, how did you get my name and phone number? Thank you." *Id.*

44     Mr. Torres replied, "I am not sure, you got transferred over to me from a 3rd party called Rate Market Place, I am not sure how they got your number, usually it would have been if you filled out something online requesting information on a refinance." *Id.*

45     These facts demonstrate that the calls were made as part of a telemarketing campaign, and that the calls were made using an automatic telephone dialing system ("ATDS").

46     The TCPA defines "automatic telephone dialing system," or "ATDS," as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

47T    "The statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks*, 904 F.3d at 1052.

1    48    The device RateMarketplace used had either: (A) the capacity to call

2    numbers produced using a random or sequential number generator, or (B) the

3    capacity to dial stored numbers automatically. *Id.*

4    49    RateMarketplace initiated unauthorized telephone solicitations to the

5    cellular phones of Plaintiff and other members of the Class using an ATDS to

6    advertise the availability of a refinance with BBMC without their prior express

7    written consent.

8    50    RateMarketplace used an ATDS to call the cellular phones of Plaintiff

9    and other Class members to connect them to BBMC in order to encourage them to

10    apply for a refinance or other loan, and did so without their prior express written

11    consent.

12    51    Defendants' autodialed calls to cellular phones were designed to

13    encourage a mortgage refinance and offer BBMC's goods or services for sale.

14    52    Consumers have complained to the Better Business Bureau ("BBB")

15    about RateMarketplace's unsolicited calls and texts made without consent to

16    advertise a refinance and the use or transmission of personal information without

17    consent.    *See*    https://www.bbb.org/us/ca/san-mateo/profile/sales-lead-

18    generation/ratemarketplace-1116-461293/complaints (last visited January 8, 2018)

19    ("This company has provided my wife's information to various loan agencies who

20    have been contacting us regarding our 'request for refinancing information'. We

21

have made no such request."… "RateMarketplace has given my phone number to multiple telemarketers. I did not ask for information on their services.").

53     Plaintiff did not give RateMarketplace or BBMC his cellular telephone number or request information from either company about a refinance.

54     Plaintiff did not expressly consent in writing to receive Defendants' autodialed telemarketing calls to his cellular phone.

## CLASS ALLEGATIONS

55     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against Defendants on behalf of himself and all other persons similarly situated throughout the United States.

56     Plaintiff proposes the following class definition:

> All persons in the United States (1) who received one or more advertising telephone calls, (2) to their mobile or cellular telephone number, (3) placed by or on behalf of Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

57     Excluded from the class are Defendants, any entity in which either Defendant has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

58    The proposed class members are identifiable through phone records and phone number databases.

59    Plaintiff is a member of the proposed class.

60    The automated technology RateMarketplace used to call Plaintiff's cell phone is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable.

61    There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.    Whether RateMarketplace used an automatic telephone dialing system to call the cellular phones of Plaintiff and others;

b.    Whether RateMarketplace initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

c.    Whether BBMC is liable for RateMarketplace's violations of the TCPA;

d.    Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

e.    Whether Defendants' actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

1     f.  Whether Plaintiff and members of the class are entitled to

2  equitable relief, including but not limited to injunctive relief.

3    62  Plaintiff's claims are based on the same facts and legal theories as the

4 claims of all class members and therefore are typical of the claims of class

5 members. Plaintiff and the other class members all received telephone calls to their

6 cellular telephone lines through the same or similar dialing system.

7    63  Plaintiff is an adequate representative of the class because his interests

8 do not conflict with the interests of the Class he seeks to represent. Plaintiff is a

9 victim of ATDS telemarketing to his cellular phone without any emergency

10 purpose and without his prior express written consent, and he is committed to the

11 vigorous prosecution of this action. Plaintiff has retained counsel competent and

12 experienced in complex TCPA class action litigation. Plaintiff will vigorously

13 prosecute this action. Plaintiff and his counsel will fairly and adequately protect the

14 interest of members of the class.

15    64  Common questions of fact and law predominate over questions

16 affecting only individual class members, and a class action is the superior method

17 for fair and efficient adjudication of this controversy. The only individual

18 questions concern identification of class members, which will be ascertainable

19 from records maintained by Defendants or their agents.

20    65  The likelihood that individual class members will prosecute separate

21 actions is remote because individual litigation of the claims of all class members is

economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

### COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

66     Plaintiff incorporates all preceding paragraphs as though fully set forth herein, and brings Count I individually and on behalf of the class.

67     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

68     As a result of Defendants' violations of the TCPA, 47 U.S.C. §227, Plaintiff and members of the class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

69     Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

70     Defendants' violations were knowing or willful.

71    If the Court determines that Defendants' actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A.    Certification of the proposed class;

B.    Appointment of Plaintiff as representative of the class;

C.    Appointment of Plaintiff's counsel as counsel for the class;

D.    An order awarding statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E.    An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F.    An order enjoining Defendants from engaging in the same or similar unlawful practices alleged herein;

G.    An order awarding costs of suit;

H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

I.    Orders granting any other relief this Honorable Court deems equitable, proper, and just.

CONTINUED ON LAST PAGE

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands a trial by jury for all issues so triable.

3

Dated: February 6, 2019          Respectfully submitted,

4

TERRY FABRICANT, individually and
as the representative of a class of

5

similarly-situated persons,

6

/s/ Robert Stempler

7

Robert Stempler (#160299)

8

Consumer Law Office of Robert Stempler, APC
8200 Wilshire Blvd, Ste 200

9

Beverly Hills, CA 90211-2331
Telephone: (323) 486-0102

10

SoCalConsumerLawyer@gmail.com

11

Phillip A. Bock (pro hac vice to be applied for)
Tod A. Lewis (pro hac vice to be applied for)

12

David M. Oppenheim (pro hac vice to be applied for)
Mara A. Baltabols (pro hac vice to be applied for)

13

BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000

14

Chicago, IL 60602
Tel: (312) 658-5500

15

Fax: (312) 658-5555
tod@classlawyers.com

16

17

18

19

20

21

18

# EXHIBIT A

From: j.torres@mybbmc.com
To:      @aol.com
Sent: 11/1/2018 10:08:28 AM Pacific Standard Time
Subject: RE: Bridgeview Bank

I am not sure, you got transferred over to me from a 3rd party called Rate Market Place, I am not sure how they got your number, usually it would have been if you filled out something online requesting information on a refinance

**Jacob Torres**
**Mortgage Banker**

760-546-7034 x647034 - Office
805-441-1461 - Mobile
630-261-6644 - eFax
NMLS - 1378714
j.torres@mybbmc.com



BBMC Mortgage
A Division of Bridgeview Bank Group
591 Camino De La Reina
Ste. 400
San Diego, CA 92108



DOCUMENT GUARDIAN ™  *Send Files Here*

   

Exhibit A
20

**NOTICE:** This is not a commitment to lend or extend credit. Restrictions may apply. Information and/or data is subject to change without notice. All loans are subject to credit approval. Not all loans or products are available in all states. **CONFIDENTIALITY AND SECURITY NOTICE:** The contents of this message and any attachments may be privileged, confidential and proprietary and also may be covered by the Electronic Communications Privacy Act. If you are not an intended recipient, please inform the sender of the transmission error and delete this message immediately without reading, disseminating, distributing or copying the contents. BBMC Mortgage, a Division of Bridgeview Bank Group (NMLS #484683) makes no assurances that this e-mail and any attachments are free of viruses and other harmful code.



  

## Patriot's Charity *Initiative*™

*BBMC Mortgage will donate $125 to one of our charity partners for each participating loan we close.*

From:        @aol.com [mailtc        @aol.com]

Sent: Thursday, November 1, 2018 10:05 AM

To: Jacob Torres <j.torres@mybbmc.com>
Subject: Re: Bridgeview Bank

SECURITY NOTE: This email came from outside of our systems. Do not open attachments or click links from unknown senders or unexpected email. If you don't expect it, suspect it!

May I know  please  how did you get my name and phone number?    Thank you

In a message dated 11/1/2018 9:26:19 AM Pacific Standard Time, j.torres@mybbmc.com writes:

> Luke,
>
> This is Jacob Torres with BBMC Mortgage   You can call me back directly at 760  546  7034   Call me as soon as you are ready and I can answer your questions and get you a rate and payment quote for your refinance    Here are a few links to our 3rd party reviews.
>
> https://www.lendingtree.com/loan-companies/bbmc-mortgage-a-division-of-bridgeview-bank-group-reviews-22610

Exhibit A

https://www.zillow.com/lender_profile/BBMCMortgage1234/

---

Jacob Torres

Mortgage Banker

760-546-7034 x647034 - Office
805-441-1461 - Mobile

630-261-6644 - eFax

NMLS -  1378714

j.torres@mybbmc.com

BBMC Mortgage

A Division of Bridgeview Bank Group

591 Camino De La Reina
Ste. 400

San Diego, CA 92108

*Send Files Here*

---

Exhibit A

NOTICE: This is not a commitment to lend or extend credit. Restrictions may apply. Information and/or data is subject to change without notice. All loans are subject to credit approval. Not all loans or products are available in all states.

CONFIDENTIALITY AND SECURITY NOTICE: The contents of this message and any attachments may be privileged, confidential and proprietary and also may be covered by the Electronic Communications Privacy Act. If you are not an intended recipient, please inform the sender of the transmission error and delete this message immediately without reading, disseminating, distributing or copying the contents. BBMC Mortgage, a Division of Bridgeview Bank Group (NMLS #484683) makes no assurances that this e-mail and any attachments are free of viruses and other harmful code.

Exhibit A